1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **EASTERN DISTRICT OF CALIFORNIA**
10
11  ARMANDO LOPEZ,                          )   Case No.: 1:11-cv-00121-JLT
                                            )
12              Petitioner,                 )   ORDER DENYING PETITION FOR WRIT OF
                                            )   HABEAS CORPUS (Doc. 1)
13      v.                                  )
                                            )   ORDER DIRECTING CLERK OF THE COURT TO
14  RAUL LOPEZ, Warden,                     )   ENTER JUDGMENT AND CLOSE FILE
                                            )
15              Respondent.                 )   ORDER DECLINING TO ISSUE CERTIFICATE
                                            )   OF APPEALABILITY
16  _____)
17
18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19  pursuant to 28 U.S.C. § 2254.  The petition was filed on January 24, 2011.  (Doc. 1).  On March 2,

20  2011, Petitioner filed his written consent to the jurisdiction of the Magistrate Judge for all purposes.

21  (Doc. 11).  On February 17, 2011, Respondent filed his written consent to the jurisdiction of the

22  Magistrate Judge for all purposes.  (Doc. 9).

23                              **PROCEDURAL HISTORY**

24          Petitioner is in custody of the California Department of Corrections and Rehabilitation

25  ("CDCR") pursuant to a December 21, 2007 judgment of the Superior Court of California, County of

26  Stanislaus (the "Superior Court").  Petitioner was convicted by jury trial of premeditated attempted

27  murder, possession of a shank while in jail or prison, and participation in a criminal street gang.

28  (People v. Lopez, 2009 WL 1783504 (Cal. App. June 24, 2009)(unpublished), slip op. at p. 1).  The

jury also found true special allegations that the offenses were committed for the benefit of a criminal street gang, that Petitioner had personally inflicted great bodily injury, and that he had personally used a weapon, i.e., the shank. (Id.). In a bifurcated proceeding, the jury found that Petitioner had suffered several prior "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)). (Id.). Petitioner was sentenced to an indeterminate term of 15 years-to-life on the attempted murder charge and determinate terms of two years on the remaining counts. (Id.).

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which, in an unpublished decision issued on June 24, 2009, affirmed Petitioner's conviction. (Id.). On July 28, 2009, Petitioner filed a petition for review in the California Supreme Court. (Doc. 19, Lodged Documents ("LD") 1). On October 14, 2009, the state supreme court denied Petitioner's petition for review.

On January 24, 2011, Petitioner filed the instant petition. (Doc. 1). Respondent's answer was filed on May 2, 2011. (Doc. 18). Petitioner has not filed a Traverse. Respondent alleges that several of Petitioner's claims are unexhausted. That issue will be addressed in the context of those specific arguments in which the issue has been raised.

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

### PROCEDURAL HISTORY

Armando Lopez (A.Lopez), Paul Anthony Lopez, Jr. (P. Lopez), and Albert Andrew Lucero (Lucero) were charged with the premeditated attempted murder (count 1) of Kenneth Lindsay, assault with a deadly weapon (count 2), possession of a shank while in jail or prison (count 3), and participation in a criminal street gang (count 4). The information also alleged that the three committed the offenses charged in counts 1, 2, and 3 for the benefit of a criminal street gang within the meaning of Penal Code1 section 186.22, subdivision (b)(1), and that the three personally inflicted great bodily injury (§ 12022.7, subd. (a)) and personally used a deadly weapon (§ 12022, subd. (b)) in the commission of the offenses charged. The information also alleged that A. Lopez had served a prior prison term and that Lucero had suffered two prior serious felony convictions and had served a prior prison term. The prosecutor ultimately

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

decided not to seek the personal-use enhancement against P. Lopez and Lucero. A fourth man, Timothy McKenzie, was charged, but was acquitted by the jury.

Following trial, the jury found all three defendants guilty on counts 1, 3, and 4, but acquitted them of assault with a deadly weapon. The jury found true the allegation that the offenses were committed for the benefit of a criminal street gang and that the three defendants had each personally inflicted great bodily injury. The jury also found that A. Lopez had personally used a weapon (the shank). In a bifurcated proceeding, the trial court found true the allegations concerning the prior prison terms and prior serious felony convictions.

Lucero was sentenced to an indeterminate term of 30 years to life on count 1 and a consecutive determinate term of eight years on the remaining counts. P. Lopez was sentenced to an indeterminate term of 15 years to life on count 1 and a consecutive determinate term of two years on the remaining counts. A. Lopez was sentenced to an indeterminate term of 15 years to life on count 1 and a determinate term of two years on the remaining counts.

**FACTUAL SUMMARY**

All three defendants were inmates at Stanislaus County Jail and all were validated members of the Norteño gang. Lindsay, McKenzie, and the three defendants were housed together with other documented members of the Norteño gang in a 12-man cell. On October 19, 2006, the inmates were removed from their cell for cell maintenance. Four of the inmates, including Lindsay, temporarily were placed together in a holding cell. While in the cell, Lindsay found three balloons of heroin. Lindsay gave one balloon to a cellmate and secreted two of the balloons on his person. Later, Lindsay informed A. Lopez and P. Lopez about the heroin. Heroin is a valuable commodity in jail. Generally, gang members are required to share with other gang members any drugs that are found, not for consumption, but for use in gaining power and control within the jail. Lindsay kept his two balloons instead of passing them on to gang leaders. He began to barter the heroin for commodity items, which violates the gang's code of conduct. Inmates who engage in this behavior face punishment and "removal" by other gang members. Fatal removals involve the use of weapons.

Later that evening, after Lindsay took his shower, he was invited to join in a game of cards. Seated at the table were the three defendants and McKenzie. While sitting at the table, Lindsay was hit from behind in the chest. He turned and saw A. Lopez. P. Lopez came to Lindsay's side. At first, Lindsay believed P. Lopez was coming to his aid, but instead P. Lopez punched Lindsay in the face and was grinning. Lindsay was hit from the other side but was not sure who hit him. He tried to grab hold of McKenzie but was unable to stay up. Lindsay fell to the floor. His assailants then kicked and hit him numerous times. Lindsay yelled "man down" in an attempt to summon deputies. P. Lopez told him to "shut up" and "close [his] eyes," a reference Lindsay understood as meaning to die. Lucero kicked him from behind. Lindsay could not say how many times he was kicked or hit or who inflicted what blows. He did not see McKenzie hit or kick him. Lindsay did not see any weapons. After A. Lopez hit him in the chest, Lindsay pushed A. Lopez off of him and A. Lopez scooted to the right and was gone.

Lindsay lost consciousness. As a result of the attack, Lindsay suffered wounds to the back of his head requiring stitches; a number of scratches, including one across his neck; a slice and

scrape across his nipple; and a small puncture-like wound on his chest that did not require stitches. There was no mention of the puncture wound or stabbing in the medical reports.

When the deputies arrived at the cell, Lindsay was down and nonresponsive. There was blood on the floor and blood scattered about the cell. None of the inmates in the cell claimed to have seen what happened. The deputies segregated the inmates who had visible signs of trauma. P. Lopez, A. Lopez, and one other inmate were found to have redness, swelling, or cuts on their hands. A. Lopez was wearing a T-shirt that had a sleeve torn off, and blood was found on his boxer shorts. P. Lopez's boxers also had blood on them. There were no marks found on Lucero's hands. After the assault, the heroin was gone.

The next morning, Deputy Teso, a gang specialist officer, came to investigate the attack. When interviewing an inmate, Teso asked him to lift his trouser legs. When the inmate complied, Teso found a "huila" or written memo. The huila was addressed to "Manos" and signed by "Soldier." It detailed the assault on Lindsay and named those who participated in the attack and provided the motive for the attack-Lindsay's failure to follow the gang's code of conduct.

Detective Navarro interviewed Lindsay the day after the assault. Lindsay did not identify any of his attackers. Later, Lindsay said he did not do so out of fear. In March 2007, Lindsay ran into A. Lopez during a court date. A. Lopez asked Lindsay if he was going to testify and told Lindsay he was lucky to be alive. Lindsay took this as a threat. After this encounter, Lindsay negotiated a deal with the prosecution and identified his attackers.

(Lopez, supra, slip op. at pp. 1-2).

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after

4

statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

governed by its provisions.

**II.**     <u>**Legal Standard of Review**</u>

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

can show that the state court's adjudication of his claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003);  <u>Williams</u>, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

<u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), citing <u>Williams</u>, 529 U.S. at 405-406.  A state court

decision involves an "unreasonable application" of clearly established federal law "if the state court

applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  <u>Id.</u>,

quoting <u>Williams</u>, 529 U.S. at 409-410; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) (*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's

decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

<u>Wiggins v. Smith</u>, 539 U.S. 510, 511 (2003) (citing <u>Williams</u>, 529 U.S. at 409).  In <u>Harrington v.

Richter</u>, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable

application" of federal law is an objective test that turns on "whether it is possible that fairminded

jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If

fairminded jurists could so disagree, habeas relief is precluded.  <u>Richter</u>, 131 S.Ct. at 786.   As the

United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose

of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in

the state criminal justice systems,'" and not as a means of error correction.  <u>Richter</u>, 131 S.Ct. at 786,

quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  <u>Richter</u>, 131 S.Ct. at 787-788.

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.  <u>Davis v. Woodford</u>, 384 F.3d at 637, citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>Wiggins v. Smith</u>, 539 U.S. at 520;  <u>Jeffries v. Wood</u>, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  <u>Id.</u> ; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), <u>cert.denied</u>, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings.   "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  <u>Miller-</u>

El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding t the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.**   **Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief:

7

I.    Admission Of The "Huila" Without Proper Authentication Violated Due Process And California Evidence Code § 352.

II. Insufficient Evidence Was Presented To Support The Great Bodily Injury Enhancement.

III. The Trial Court Failed To Properly Instruct The Jury Regarding The Great Bodily Injury Enhancement.

IV.   Petitioner's Right To A Fair Trial Was Impinged By The Coaching Of A Prosecution Witness.

V. Petitioner's Right To A Fair Trial Was Impinged Because Prospective Jurors Did Not Take An Oath To Be Truthful.

VI. Petitioner's Right To A Fair Trial Was Impinged By The Failure To Poll Jurors.

I.    <u>Admission Of The "Huila" Without Proper Authentication Violated Due Process</u>.

Petitioner first makes several arguments related to the admission of the "huila" that incriminated Petitioner in the beating of the victim.  Petitioner's claims lack merit.

A.  <u>The 5th DCA's Opinion.</u>

The 5th DCA rejected Petitioner's claim as follows:

I. Admission of the "huila "

The defendants raise a number of issues related to the admission of the huila found the day after the assault. It was written to "Manos" and signed by "Soldier." Deputy Teso testified that "Manos" referred to Lucero, who was also known as "Lil Man," and that A. Lopez was "Soldier." Navarro testified that Lucero was known by two monikers, "Lil Man" and "Manos." Lindsay said that A. Lopez was the gang member referred to as "Soldier." The huila documented that the attempted "removal" of Lindsay occurred on October 19, 2006. It explained that the removal was for "degenerate acts, use of drugs, heroin, promoting it, and spreading negativity amongst our people." It also charged Lindsay with numerous prior violations of the gang code. The author noted that he had "assisted" in the removal, and that he had arrived at the jail on "Thursday, 10-12-06, from DVI, Tracy." After explaining the details of the acts leading to the removal, the author stated, "I was the hitter. After I hit [Lindsay] a few times, in the chest area, I went for the neck. I then noticed my piece broke, and I flushed it. [Lindsay] called 'man down,' and then the K9's arrived."

Both Lindsay and Teso testified that huilas are used to communicate within the gang and are carried by designated couriers from place to place. Huilas are written on very small pieces of paper to avoid detection, and writing a huila is a skill learned by gang members.

Obviously a damaging piece of evidence, the admission of the huila was litigated heavily at trial. On appeal, the defendants raise [the following] related issues: (1) was the huila properly authenticated; [and] (2) was it properly admitted under Evidence Code section 352…..

A. Authentication

8

Evidence Code section 1401 requires that a document be authenticated before it is admitted into evidence. The defendants claim that the trial court erred when it admitted the huila after finding that it had been authenticated pursuant to Evidence Code section 1421. This section provides that a writing may be authenticated by evidence that the writing refers to or states matters unlikely to be known by anyone other than the claimed author. The trial court found that only A. Lopez would have known the exact date of his arrival at the Stanislaus County Jail. The defendants claim this finding cannot withstand scrutiny because Lindsay also remembered the date of A. Lopez's arrival, many months later, and that there were 11 men in the cell who would have known the details of the assault.

On appeal, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. (People v. Waidla (2000) 22 Cal.4th 690, 717-718; People v. Williams (1997) 16 Cal.4th 153, 197.) We find error only where the trial court's decision exceeds the bounds of reason. (People v. Funes (1994) 23 Cal.App .4th 1506, 1519.) In addition, we review the trial court's ruling, not its reasoning. (People v. Mason (1991) 52 Cal.3d 909, 944.)

There are innumerable ways in which a document may be authenticated. (People v. Olguin (1994) 31 Cal.App.4th 1355, 1372; People v. Gibson (2001) 90 Cal.App.4th 371, 383; McAllister v. George (1977) 73 Cal.App.3d 258, 263.) Evidence Code section 1410 provides that, "[n]othing in this article shall be construed to limit the means by which a writing may be authenticated or proved." "Circumstantial evidence, content and location are all valid means of authentication. [Citations.]" (People v. Gibson, supra, at p. 383; see also People v. Olguin, supra, at p. 1372 [both content and location identified papers as work of defendant].) Here, the huila was found on one of the cellmates the day after the assault. It described the assault in detail and is consistent with the evidence at trial. There was evidence that huilas are used to communicate with gang members in other locations in the jail and outside the jail about gang activity. Teso testified that, because Lindsay was a gang member with some status, the attack had to be justified to gang leaders. The manner of the writing, small print on a small piece of paper, is consistent with the description of huilas given by Lindsay and Teso. The huila was signed by "Soldier," a moniker for A. Lopez. In combination, there is ample circumstantial and direct evidence that the huila is what the prosecution purports it to be: a gang communiqué, written by A. Lopez, reporting the assault on Lindsay. (See People v. Olguin, supra, 31 Cal.App.4th at p. 1372 [lyrics handwritten on yellow paper properly authenticated as being written by defendant where they refer to author by defendant's gang moniker or by nickname easily derived from defendant's proper name, include references to Southside gang membership, and could be interpreted as referring to disk-jockeying, a part-time employment of defendant].)

The other objections to the contents of the huila go to its weight, not to admissibility. There was a reference to "Lil Man" in the body of the huila, which might suggest the "Manos" the huila was addressed to was not Lucero. It seems improbable, however, that A. Lopez would write a huila to Lucero telling him that he (Lucero) participated in the assault. Or, if the purpose of the huila was not to inform, but to memorialize, it also is improbable that A. Lopez would use two different monikers to refer to the same person. The record is clear that Lucero is usually referred to as "Lil Man." The jurors, however, did not see or hear this reference, and any question they might have had about why A. Lopez was writing to Lucero was resolved against Lucero.

B. Evidence Code section 352

The defendants also contend that the evidence was improperly admitted under Evidence Code section 352 because it was highly prejudicial. Again, the applicable standard of review is for an abuse of discretion. (People v. Lindberg (2008) 45 Cal.4th 1, 49-50.) "Evidence Code section

9

352 is designed for situations in which evidence of little evidentiary impact evokes an emotional bias. [Citation.]" (People v. Olguin, supra, 31 Cal.App.4th at p. 1369.)

We see no error in admitting the huila because it was highly relevant and not likely to invoke a purely emotional bias. The huila establishes A. Lopez's culpability and is proof of gang motivation. It also establishes evidence of possession of a shank. Highly relevant evidence, even though prejudicial to the defense, is not the type of evidence that Evidence Code section 352 was intended to exclude. (People v. Zapien (1993) 4 Cal.4th 929, 958 [statute not intended to prevent prejudice or damage to defense that naturally flows from relevant, highly probative evidence].)

(Lopez, supra, slip. op. at pp. 3-4).

          B.  Analysis.

     Respondent correctly argues that Petitioner's claim is meritless as Petitioner fails to allege a

violation of clearly established Supreme Court precedent in support of his claim.

Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. (Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006)).

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, (see Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." (Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006)). Under the strict standards of AEDPA, we are therefore without power to issue the writ on the basis of [Petitioner's] additional claims.

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.2009).

     In this case, Petitioner fails to allege the violation of any clearly established Supreme Court

authority for the admission of improperly authenticated evidence in violation of his federal

constitutional rights. Therefore, the claim must be rejected. See 28 U.S.C. § 2254(d).

     Moreover, to the extent that the issue is presented as a violation of the State of California's

authentication rules, as codified in Evid. Code § 1240, it is solely a question of state law that is not

cognizable in federal habeas proceedings.  Generally, issues of state law are not cognizable on federal

habeas review.  Estelle v. McGuire, 502 U.S. 62, 67 (1991)("We have stated many times that 'federal

1    habeas corpus relief does not lie for errors of state law.'"), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780

2    (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring)("mere error of

3    state law, one that does not rise to the level of a constitutional violation, may not be corrected on

4    federal habeas").   "Conclusory allegations which are not supported by a statement of specific facts do

5    not warrant habeas relief."  James v. Borg, 24 F.3d 20, 29 (9th Cir.1994).  Indeed, federal courts are

6    bound by state court rulings on questions of state law.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399

7    (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). Further, "the availability of a claim under state law does

8    not of itself establish that a claim was available under the United States Constitution." Sawyer v.

9    Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989). Tinsley v.

10   Borg, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary

11   rulings are not the basis for federal habeas relief).

12           Finally, to the extent that Petitioner's claim is framed solely as a violation of Cal. Evid. Code §

13   352, i.e., the admission of evidence whose prejudicial value outweighed its probative effect, it is,

14   again, not cognizable as a federal habeas claim.[2]  Since the issue is framed as being a violation of state

15   evidentiary rules, it is solely a matter of state law and, for the reasons set forth in the preceding

16   paragraph, is not cognizable in these habeas proceedings.

17           II.  Insufficiency Of The Evidence.

18           Petitioner next contends that insufficient evidence was presented regarding the enhancement of

19   personal infliction of great bodily injury.  Petitioner is mistaken.

20           A.  The 5th DCA's Opinion.

21   A. Lopez contends that there was insufficient evidence to sustain the jury's finding that he
     personally inflicted great bodily injury. We disagree.

22
23   A. Lopez argues unpersuasively that, because he is specifically named as being responsible for
     the slight puncture-type wound to Lindsay's chest and scratches to his neck, which do not
     amount to serious bodily injury, he cannot be found to have personally inflicted great bodily
24   injury on a group-beating theory. (People v. Salas (1978) 77 Cal.App.3d 600, 605 [term "great
     bodily injury" means significant or substantial bodily injury].) Lindsay testified that A. Lopez
25   started the attack by hitting Lindsay in the chest (in the area of the puncture wound) and by
     coming across his neck with a cutting instrument. Although Lindsay testified that, after the

26

27   ――――――――――――――――――――
     [2] Respondent also correctly notes that this "version" of Petitioner's claim was never presented to the California Supreme
28   Court as required by the exhaustion doctrine.  (Doc. 18, p. 15).  However, since the issue is not cognizable under federal
     habeas law because it is framed as an issue solely of state law, the Court need not address the exhaustion issue.

initial hits, he did not see A. Lopez, and although the huila suggests that once the shank broke, A. Lopez flushed it, there is evidence from which the jury could conclude that A. Lopez nonetheless played a significant part in the group beating.

Evidence that A. Lopez flushed the shank does not require a conclusion that A. Lopez withdrew from the attack and only inflicted the injuries directly linked to the shank. Lindsay's injuries were substantial-from the time the beating started until he was knocked unconscious. Lindsay testified he was kicked and hit multiple times even though he was unable to identify where each kick or hit came from. There is no need to establish what particular blow or kick caused the injuries. (See People v. Banuelos (2003) 106 Cal.App .4th 1332, 1337 [when defendant participates in group beating, defendant may be punished with great-bodily-injury enhancement if his conduct could have caused great bodily injury suffered even when not possible to determine which assailant inflicted which injuries]; People v. Corona (1989) 213 Cal.App.3d 589, 593 [even though no evidence directly ties injury suffered to any particular blow struck by defendant, if defendant joined in delivery of blows and victim suffered great bodily injury, personal-infliction enhancement stands].) The deputies at the scene observed swelling and redness on A. Lopez's hands; Lindsay said he pushed A. Lopez off his chest. This evidence supports an inference that A. Lopez participated in the group beating and his role was not limited to wielding the shank.

As we have stated, when reviewing the sufficiency of the evidence, it does not matter that facts and circumstances could have reasonably supported the opposite finding. (People v. Millwee (1998) 18 Cal.4th 96, 132.) The jury is charged with making the factual calls and we will not reverse where the jury's conclusions are supported by evidence in the record and all reasonable inferences to be drawn from the evidence.

(Lopez, supra, slip op. at pp. 8-9).

B.  Analysis.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:  "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319.  Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations.  See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion and speculation cannot support logical inferences.  Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case.  Id. at 1275.[3]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539,

---

[3] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

597, 102 S.Ct. 1198 (1981).

Recently, in <u>Cavazos, v. Smith</u>, __U.S. __, 132 S.Ct. 2 (2011), the Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson</u>

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Cavazos</u>, 132 S.Ct. at 3.

> "<u>Jackson</u> says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781.

<u>Cavazos</u>, 132 S.Ct. at 6.

Here, the state court applied the correct standard under <u>Jackson</u> in finding that sufficient evidence was presented regarding the enhancement.[4]  As the 5th DCA observed, Petitioner's argument is that, because he was found to have wielded the sharp instrument that inflicted only superficial injuries on the victim then, *ipso facto*, he could not have been guilty of inflicting great bodily harm. The flaw in this reasoning, as the 5th DCA notes, is that the evidence clearly establishes that a group beating of the victim occurred.  The evidence also indicates that Petitioner initiated the group beating by hitting the victim in the chest, that the victim was kicked and hit multiple times, although he could not see who was assaulting him, and that Petitioner's hands were found to be red and swollen, consistent with a physical assault, after the incident.  Although Petitioner "flushed" his weapon when the tip broke, that does not necessarily mean that he had withdrawn or that he took no further part in

---

[4] California's substantial evidence rule is identical to the federal rule announced in <u>Jackson</u>. <u>In re Frederick G.</u>, 96 Cal.App.3d 353, 365-366 (1979).

the assault.  All of the evidence, taken as a whole, suggests the three assailants together participated fully in the group beating for the benefit of their gang.  Under such circumstances, sufficient evidence was presented to find Petitioner guilty of the great bodily injury enhancement.  Thus, the state court's adjudication of this issue was neither contrary to nor an unreasonable application of clearly established federal law.

III. The Trial Court Erred To Properly Instruct The Jury Regarding The Great Bodily Injury Enhancement.

A. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

The defendants contend that the trial court erred in failing to instruct the jury sua sponte with Judicial Council of California Criminal Jury Instructions (2006-2007) (CALCRIM) No. 3160 which provides:

"If you find the defendant guilty of the crime[s] charged in Count [s] _____[,] ... you must then decide whether ... the People have proved the additional allegation that the defendant personally inflicted great bodily injury on [the injured person] in the commission [or attempted commission] of that crime. [You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.] [¶] ... [¶]

"Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] ... [¶]

"<Group Assault>

"[If you conclude that more than one person assaulted [the injured person] and you cannot decide which person caused which injury, you may conclude that the defendant personally inflicted great bodily injury on [the injured person] if the People have proved that:

"1. Two or more people, acting at the same time, assaulted [the injured person] and inflicted great bodily injury on (him/her);

"2. The defendant personally used physical force on [the injured person] during the group assault;

"AND

"[3A. The amount or type of physical force the defendant used on [the injured person] was enough that it alone could have caused [the injured person] to suffer great bodily injury(;/.) ]

"[OR]

15

"[3B. The physical force that the defendant used on [the injured person] was sufficient in combination with the force used by the others to cause [the injured person] to suffer great bodily injury.

"The defendant must have applied substantial force to [the injured person]. If that force could not have caused or contributed to the great bodily injury, then it was not substantial.] [¶] ... [¶]

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

A trial court is required to instruct sua sponte on the relevant general principles of law governing a case. This obligation includes instructions on all of the elements of an enhancement. (People v. Clark (1997) 55 Cal.App.4th 709, 714-715.) We agree that the trial court should have given this instruction. Even so, we conclude there is no prejudice.

When evaluating whether instructional error requires reversal, we are guided by the following principles. First, the correctness of jury instructions is determined from the entire charge of the court. (People v. Harrison (2005) 35 Cal.4th 208, 252; People v. Guerra (2006) 37 Cal.4th 1067, 1148-1149 [claims of instructional error evaluated in context of overall charge to jury; jury presumed to be intelligent and capable of understanding entire charge], disapproved on other grounds in People v. Rundle (2008) 43 Cal.4th 76, 151.) Second, the absence of an element in one instruction may be provided by another instruction. Likewise, confusion in one instruction may be cured by a second. (People v. Burgener (1986) 41 Cal.3d 505, 539, disapproved on other grounds in People v. Reyes (1998) 19 Cal.4th 743, 751.) Even though the failure to instruct on an element of an enhancement invokes federal constitutional issues, reversal is not per se. Instead, the failure to instruct on an element is reviewed under the Chapman standard. (People v. Mayfield (1997) 14 Cal.4th 668, 774 [when instruction omits required definition or misdescribes an element, it is harmless only if beyond a reasonable doubt that error did not contribute to verdict]; accord, People v. Newby (2008) 167 Cal.App.4th 1341, 1348.)

Although the court here gave no specific instruction directed at the great-bodily-injury enhancement, the jury was told that one of the enhancements was whether the defendants had personally inflicted great bodily injury on Lindsay. The jury was also told that the great-bodily-injury enhancements required a general criminal intent, and that "[t]o be guilty of these ... enhancements, a person must not only commit the prohibited act, but must do so intentionally and on purpose...." The jury was told twice that great bodily injury "means significant or substantial physical injury," "an injury that is greater than minor or moderate harm." This is the same language found in CALCRIM No. 3160.

If the jury concluded that the defendants were guilty of attempted murder, the verdict form asked the jury to determine whether the defendants did "personally inflict great bodily injury upon" Lindsay in violation of section 12022.7, subdivision (a). In addition, the jury was told that, with respect to all counts charged, the prosecution bore the burden of proof, which was identified as beyond a reasonable doubt. CALCRIM No. 3160 adds little to this charge, except that it instructs the jury how to evaluate evidence of a group assault, which tells the jury it does not have to link an injury to a particular defendant.

Given all of the instructions, and having concluded on proper instruction that each of the defendants had attempted to murder Lindsay and that each had done so for the benefit of a criminal street gang, the jury was highly unlikely to have reached a different outcome had it been instructed pursuant to CALCRIM No. 3160. The missing components of CALCRIM No. 3160, that part which cannot be found in the full charge to the jury, is that related to group

16

beatings. Here, Lindsay testified that he had been kicked and/or hit by all three defendants, identifying specific blows from each defendant. P. Lopez hit Lindsay in the face at least twice and told him to shut up and close his eyes. Lucero kicked Lindsay. A. Lopez hit Lindsay in the chest. A. Lopez and P. Lopez had swelling and redness observable on their hands immediately after the assault. Lindsay testified he was getting hit and kicked from all sides. Had the instruction on group assault been given, we have no doubt that the jury would have found the elements of a group beating: (1) each of the defendants participated in the assault; (2) each physically used force on Lindsay; and (3) the force used either individually or in combination inflicted serious and substantial harm. On this record, we conclude that any error in failing to give CALCRIM No. 3160 is harmless beyond a reasonable doubt.

(Lopez, supra, slip op. at pp. 9-11).

        B.    Analysis.

        Respondent first contends that Petitioner has only exhausted this claim to the extent that Petitioner is arguing structural error.  (Doc. 18, p. 18). The Court agrees.

        A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must first exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

        A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  In this instance, the highest state court would be the California Supreme Court.  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).  Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).

        Here, Petitioner presented the issue to the California Supreme Court as an error that is

17

reversible per se, i.e., structural.  Petitioner did not allege that the state court's actual finding of harmlessness beyond a reasonable doubt was erroneous.  Accordingly, only the former question is exhausted.  However, even were that not the case, both claims should be denied on their merits.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the error so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. at 72; see Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 146–47, 94 S.Ct. 396 (1973) in finding that a habeas court must not merely consider whether an "instruction is undesirable, erroneous, or even universally condemned" but must instead determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'"); see also Waddington v. Sarausad, 555 U.S. 179, 191, 129 S.Ct. 823, 832 (2009) (noting that the pertinent question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process"). An erroneous jury instruction "directed toward an element of the offense may rise to the level of a constitutional defect." Byrd v. Lewis, 566 F.3d 855, 862 (9th Cir.2009) (citing Neder v. United States, 527 U.S. 1, 9–10, 119 S.Ct. 1827 (1999)). "Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt. [Citation] 'Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.'" Townsend v. Knowles, 562 F.3d 1200, 1209 (9th Cir.2009) (quoting Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830 (2004)). Additionally, "[t]he jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (citation and internal quotation marks omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Middleton, 541 U.S. at 437.

Generally, the failure to instruct on an element of the offense is considered to be an error in the trial process, not a structural error affecting the framework within which the trial proceeds, and is thus subject to harmless error review. E.g., United States v. Smith, 561 F.3d 934, 938 (9th Cir. 2009); Evanchyk v. Stewart, 340 F.3d 933, 940 (9th Cir. 2003).  In Powell v. Galaza, 328 F.3d 558, 566 (9th Cir.2003), the Ninth Circuit found that the failure to instruct on an element of the offense constituted a

1    directed verdict.  However, the instructional error complained of here is not analogous to the error in

2    Powell since, in that case, the Ninth Circuit confronted a situation where the trial court instructed the

3    jury that the defendant's testimony satisfied the specific intent element required for the crime. As the

4    specific intent was the only disputed element in Powell and as there was nothing left for the jury to

5    find, the instruction effectively constituted a directed verdict.  Here, however, the Court finds the

6    complained of error is more analogous to instructing on an invalid theory of liability. Neder, 527 U.S.

7    at 9–10 (quoting Johnson v. United States, 520 U.S. 461, 469, 117 S.Ct. 1544 (1997) in stating that

8    "improperly omitting an element from the jury can 'easily be analogized to improperly instructing the

9    jury on an element of the offense,'"); see Hedgpeth v. Pulido, 555 U.S. 57, 60, 129 S.Ct. 530, 532

10   (2008)(applying harmless error analysis to jury instruction containing an invalid theory of felony

11   murder). In Pulido, the Supreme Court rejected the argument that instructing a jury on multiple

12   theories of guilt, one of which was legally improper, was a structural error, stating that "[a]n

13   instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's

14   findings than does omission or misstatement of an element of the offense when only one theory is

15   submitted." Id. In sum, Pulido "reinforced the holding in Neder that unless all the jury's findings are

16   vitiated, harmless error review applies." Byrd v. Lewis, 566 F.3d 855, 864 (9th Cir.2009) ("In Pulido,

17   the Court left no doubt that its intent in Neder was to limit structural error review to those trial

18   deficiencies that negated all the jury's findings, rather than to a preliminary finding that merely

19   contributed to the ultimate determination of guilt"). In the instant case, for the reasons discussed

20   below, the Court cannot conclude that the failure to instruct on the group assault negated all of the

21   jury's findings. Thus, Petitioner's case is subject to a harmless error analysis, i.e., it is not structural

22   error; hence, the state court's determination to that effect was not objectively unreasonable.

23        To the extent that Petitioner is further contending that the actual harmless error analysis was

24   deficient—an issue that, as mentioned previously, is unexhausted—it is also without merit.  The 5th

25   DCA explained that most of the omitted language pertaining to group beatings was contained in other

26   instructions, that the evidence was uncontroverted that Petitioner and another defendant had red and

27   swollen hands consistent with having used their fists, that the victim testified that all three defendants

28   assaulted him, and that, therefore, it was unlikely that, even if specifically instructed on the omitted

language about group beatings, the jury would have returned a different verdict.  From the foregoing, the state court could have concluded that the error was harmless beyond a reasonable doubt. Hence, the state court's adjudication on the merits was not objectively unreasonable. And for those same reasons, this Court also concludes that the instructional omission did not have a "substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht v. Abrahamson</u>, 507 U.S. at 631. Accordingly, this claim should be rejected.

IV.   <u>Petitioner's Right To A Fair Trial Was Impinged By The Coaching Of A Prosecution Witness</u>.

A.   <u>The 5th DCA's Opinion</u>.

The 5th DCA rejected Petitioner's claim as follows:

The defendants contend that they were denied due process and a fair trial because Lindsay was coached by Deputy Teso to change his trial testimony. Teso escorted Lindsay to trial each day and therefore had an opportunity to speak with him outside of the courtroom. In addition, Teso was the designated investigator and the gang expert for the prosecution so he was aware of the legal issues and proof needed in the prosecution case. On May 7, 2007, Lindsay testified that A. Lopez had come to the Stanislaus County Jail from state prison a "week before" October 19, 2006. The next day, on May 8, 2007, Lindsay testified that A. Lopez came from state prison, "probably" 10 days before the 19th, "maybe the 9th, 8th, something of that week." The jail records established that A. Lopez arrived at the jail on October 12, exactly seven days prior to the 19th.

In admitting the huila, the trial court found the statement in it that A. Lopez had arrived on October 12 was information only A. Lopez would have in his possession. The defendants argue that Lindsay's initial testimony that A. Lopez came to the jail the week before October 19 equates to testimony that A. Lopez arrived at the jail precisely on October 12 and therefore undercuts the trial court's finding with respect to the huila. The defendants also argue that Lindsay's change of testimony on this key point supports an inference that Lindsay changed his testimony after being coached by Teso. We disagree.

We have already concluded that, notwithstanding the trial court's reasoning, the huila was properly authenticated. Second, we are not certain Lindsay's initial statement that A. Lopez came to the jail the week before October 19 must be read to mean he arrived on an exact date: October 12. The term "one week ago" does not always mean a specific calendar date exactly seven days prior but instead establishes a time frame. Although Lindsay's later testimony appears to expand the time frame to 10 days, the change is not significant enough to undercut the trial court's finding regarding the admission of the huila.

Even if we were to conclude that Lindsay actually changed his testimony to assist the prosecution, there is nothing in the record to suggest that Teso coached Lindsay to do so. There are many possibilities to explain the slight change in Lindsay's testimony. For example, he may simply have remembered the time frame differently. Upon being questioned by the prosecution a second time, Lindsay might have been less confident in his earlier recollection. Further, Lindsay, who had transcripts and records in his possession, might have reached his own conclusion about the impact his prior testimony had on the prosecution and decided to change it to benefit the prosecutor's case. Any of these reasons are just as plausible as concluding that

Teso coached Lindsay. (See People v. Gray (2005) 37 Cal.4th 168, 230; In re Avena (1996) 12 Cal.4th 694, 738; People v. Williams (1988) 44 Cal.3d 883, 933.)

(Lopez, supra, slip. op. at pp. 11-12).

    B. Analysis.

Respondent argues the claim is without merit since Petitioner fails to demonstrate that Deputy Teso coached Lindsay and because there is no "clearly established" federal law on this issue, thus precluding AEDPA relief. The Court agrees.

First, Respondent correctly notes that, while the use of perjured testimony is prohibited under Napue v. Illinois, 360 U.S. 264, 269 (1959), Petitioner is not contending that perjured testimony was used in this case. Rather, the issue is presented as one that could be characterized as "unlawful coaching" of a witness by a law enforcement officer. However, the Court is unaware of, and Petitioner does not cite, any United States Supreme Court authority indicating that such a claim rises to the level of a federal constitutional violation. In the absence of any "clearly established federal law" on this issue, AEDPA relief is foreclosed.

Second, as the 5th DCA noted, there is nothing in the record that would indicate Teso persuaded Lindsay to change his testimony or that Lindsay did indeed change his testimony to suit the prosecution. Lindsay appeared to alter his recollection of when A. Lopez had arrived at the Stanislaus County Jail from a "week before" to "probably" 10 days before the 19th of October. Nevertheless, as found by the state court, this change in testimony does not establish that Lindsay was coached. The phrase "a week ago" is simply the witness's approximation of a general time frame and cannot be literally read as meaning exactly or precisely seven days. In addition, Lindsay had transcripts and records in his possession which he could easily have used for reference in modifying his testimony. In sum, the de minimis change in Lindsay's recollection of the time frame simply fails to establish that he was coached. Finally, as the state court noted, even if Lindsay's change in testimony could be presumed to be the result of outside "coaching," the record simply does not establish who coached him, under what circumstances, or why.

Moreover, defense counsel was free to address Lindsay's credibility on cross-examination or closing argument, and in fact did so. See Geders v. United States, 425 U.S. 80, 89–90, 96 S.Ct. 1330,

47 L.Ed.2d 592 (1976) ("opposing counsel in the adversary system is not without weapons to cope

with 'coached' witnesses"); United States v. Sayakhom, 186 F.3d 928, 945 (9th Cir.1999) ("[c]ross-

examination and argument are the primary tools for addressing improper witness coaching"). Finally,

even if coaching occurred, Petitioner has not demonstrated how such coaching made his trial

fundamentally unfair. Sayakhom, 185 F.3d at 945.

Petitioner fails to demonstrate that the state court's decision was contrary to, or involved an

unreasonable application of, clearly established Federal law.  28 U.S.C. § 2254(d)(1). Hence, the claim

must be denied.

V. Petitioner's Right To A Fair Trial Was Impinged Because Prospective Jurors Did Not Take An Oath To Be Truthful.

A. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

The defendants contend that the trial court erred when it failed to administer the oath to prospective jurors prior to voir dire as required by Code of Civil Procedure section 232, subdivision (a).  The record is silent about whether the first panel of prospective jurors was sworn before the start of voir dire on April 26, 2007. It does affirmatively establish that on May 1 at the start of proceedings, and after a second panel of jurors had been called up, the court administered the oath to all prospective jurors in the audience, and again administered the oath when a third group of jurors was provided on May 2. Some of the jurors impaneled, however, were part of the first panel and initially questioned by the court apparently without the oath having been administered. Assuming that the oath was not given, this was error. However, as the California Supreme Court observed in People v. Carter (2005) 36 Cal.4th 1114, 1176-1177, such error is not structural unless there is evidence that one or more of the jurors impaneled was biased against the defendants, of which there is no evidence here.

We agree with the Attorney General that the error has been forfeited by a failure to raise it when the error could have been corrected. The applicable rule is well established in California jurisprudence. An appellate court will not consider procedural defects or erroneous rulings that could have been but were not presented to the trial court, particularly when the error is one that could have been easily corrected by the trial court had it been brought to the trial court's attention. (People v. Saunders (1993) 5 Cal.4th 580, 589-590; see also People v. Staten (2000) 24 Cal.4th 434, 451-452 [alleged improper voir dire questions]; see also Estelle v. Williams (1976) 425 U.S. 501, 508, fn. 3 [obligation exists to call errors, even those involving constitutional rights, to court's attention so court will have opportunity to remedy error].) Other jurisdictions have reached the same conclusion. (Gober v. State (1981) 247 Ga. 652, 655 [278 S.E.2d 386] [court declined to reverse conviction because voir dire was not conducted under oath where counsel failed to object]; State v. Glaros (1960) 170 Ohio St. 471 [166 N.E.2d 379] [failure to administer oath to prospective jurors not grounds for reversal where no objection made in trial court]; Wheeler v. State (Ala.Crim.App.2005) 939 So.2d 51, 53 [same].) This is a perfect example of an error that could have been corrected had it timely been brought to the trial court's attention. Since it was not, the defendants have forfeited their claim.

In an effort to avoid a claim that counsel rendered ineffective representation by failing to object to the court's alleged oversight, we also conclude that no prejudice resulted from the failure to administer the oath at the start of voir dire. (People v. Carter, supra, 36 Cal.4th at pp. 1176-1177 [failure to administer voir dire oath reviewed for prejudice]; Strickland v. Washington (1984) 466 U.S. 668, 697 [when defendant cannot establish prejudice, unnecessary to consider whether counsel's performance deficient].) Although there was no pretrial questionnaire completed under oath, as was done in People v. Lewis (2001) 25 Cal.4th 610, 629-930, the court did inform the prospective jurors that "[i]f there is any fact or any reason why any of you might be biased or prejudiced in any way, you must disclose such reasons when you are asked to do so. It is your duty to make this disclosure." The court explained the purpose of voir dire and emphasized the need to question the jurors in order to ensure a fair and impartial jury.

There is no indication that any of the jurors who were ultimately impaneled were untruthful when answering the court's questions. After being sworn, the prospective jurors were subjected to extensive and probing voir dire by the attorneys. There is no evidence the attorneys' questioning was inadequate to test the fairness of the potential jurors. (See People v. Lewis, supra, 25 Cal.4th at p. 631.) When the jury panel was selected, the jurors were sworn pursuant to Code of Civil Procedure, section 232, subdivision (b).

The defendants argue that the failure of three prospective jurors to reveal information when questioned during voir dire suggests that all prospective jurors were unaware of their duty to answer the voir dire questions truthfully. We believe this evidence suggests just the opposite. All three of these jurors came forward on their own before trial started with additional information concerning their ability to serve as jurors. One juror said her neighbor was a probation officer who had previously told her about the danger of criminal gangs and, although she did not think it would bother her, she was afraid to be on the jury. She had not mentioned before that her neighbor was a probation officer but volunteered this information later. A second juror came forward with a letter from a chiropractor saying the juror would be unable to sit for long periods due to a back condition. The juror had not brought up the disability during voir dire. During questioning about his disability, the juror volunteered that he had been a motorcycle gang member for seven years. The juror said, "I probably should have come clean about this," suggesting he knew he was obligated to answer questions truthfully. An alternate juror said she was having trouble sleeping and was frightened. Although she had mentioned before that she had been burglarized and that she lived in a gang-infested neighborhood, she had not mentioned her sleeping problems or her intense fear of serving on the jury. All three were dismissed and did not serve on the jury. These jurors took their duty seriously and voluntarily revealed information they came to see as relevant to their ability to serve as impartial jurors, even though they had not revealed it earlier. There is no evidence the defendants were prejudiced because the initial part of voir dire was not conducted under oath.

(Lopez, supra, slip op. at pp. 12-13).

B. Analysis.

Preliminarily, the Court agrees with Respondent that this issue is unexhausted, thus precluding federal habeas review. However, even were that not the case, it fails on its merits.

Nowhere does petitioner show that failure to swear a jury at any time violated any federal constitutional right under clearly established Supreme Court law. In a different, but analogous situation, the United States Supreme Court has rejected the argument that a mistake as to swearing potential

23

jurors to a jury questionnaire form raises any federal issues. <u>See Baldwin v. State of Kansas</u>, 129 U.S. 52, 56 (1889) (finding no federal issue in the allegedly improper swearing of a state court jury).

Second, the state court found the claim to be waived since it could have been raised by the defense and cured by the trial court at the time it occurred, but was not. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991); <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001); <u>see Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements . . . ."); <u>see also</u> <u>Fox Film Corp. v. Muller</u>, 296 U.S. 207, 210 (1935).  This concept has been commonly referred to as the procedural default doctrine.  This doctrine of procedural default is based on concerns of comity and federalism. <u>Coleman</u>, 501 U.S. at 730-32.  If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." <u>Noltie v. Peterson</u>, 9 F.3d 802, 804-805 (9th Cir. 1993); <u>Coleman</u>, 501 U.S. at 750; <u>Park v. California</u>, 202 F.3d 1146, 1150 (9th Cir. 2000).

The mere occurrence, however, of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus.  In order for the procedural default doctrine to apply and thereby bar federal review, the state court determination of default must be grounded in state law that is both *adequate* to support the judgment and *independent* of federal law. <u>Ylst</u>, 501 U.S. at 801; <u>Coleman</u>, 501 U.S. at 729-30; <u>see also</u> <u>Fox Film Corp.</u>, 296 U.S. at 210.  Put another way, the procedural default doctrine will apply only if the application of the state procedural rule provides "an adequate and independent state law basis" on which the state court can deny relief. <u>Park</u>, 202 F.3d at 1151, *quoting*, <u>Coleman</u>, 501 U.S. at 729-30.

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001) (*citing* <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469 (1983)); <u>Morales v. Calderon</u>, 85 F.3d 1387, 1393

1  (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest

2  primarily on federal law, or to be interwoven with federal law.'" (*quoting* <u>Coleman</u>, 501 U.S. at 735).

3  "A state law is so interwoven if 'the state has made application of the procedural bar depend on an

4  antecedent ruling on federal law [such as] the determination of whether federal constitutional error has

5  been committed.'" <u>Park</u>, 202 F.3d at 1152 (*quoting* <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75, 105 S.Ct. 1087

6  (1985)).

7        To be deemed adequate, the state law ground for a decision must be well-established and

8  consistently applied. <u>Poland v. Stewart</u>, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule

9  constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed'

10  at the time it was applied by the state court.")(*quoting* <u>Ford v. Georgia</u>, 498 U.S. 411, 424, 111 S.Ct.

11  850 (1991)).  Although a state court's exercise of judicial discretion will not necessarily render a rule

12  inadequate, the discretion must entail "'the exercise of judgment according to standards that, at least

13  over time, can become known and understood within reasonable operating limits.'" <u>Id</u>. at 377 (*quoting*

14  <u>Morales</u>, 85 F.3d at 1392).   California law requires that, with certain exceptions, appellate courts will

15  not consider claims of error that could have been, but were not, raised in the trial court. <u>Peole v. Vera</u>,

16  15 Cal.4[th] 269, 275 (1997).  That rule has been deemed both independent of federal law, <u>People v.</u>

17  <u>Williams</u>, 16 Cal.4[th] 153, 208 (1997), and consistently applied. <u>Melendez v. Pliler</u>, 288 F.3d 1120,

18  1125 (9th Cir. 2002).

19        Here, the record is uncontroverted that defense counsel did not tender a timely objection to the

20  trial court's inadvertent failure to swear in the first group of potential jurors.  Accordingly, Petitioner

21  was procedurally barred from raising it in the state appellate courts and, indeed, the 5th DCA

22  recognized this fact in its opinion.  (<u>Lopez, supra</u>, slip op. at p. 12).

23        However, even were the claim not barred, the 5th DCA's explanation as to why the oversight

24  was not prejudicial was not objectively unreasonable.  Here, as the 5th DCA explained, potential jurors

25  in the second and third groups were properly sworn, and thus it is only those few jurors in the original

26  group who eventually were empaneled who were not sworn.  Also, as discussed by the state court, the

27  actual jury was sworn prior to trial.  The 5th DCA assumed that, for the jurors in the first group who

28  were sitting in the jury booth and who had not been sworn at the time of the second and third groups

were sworn, the failure to swear in those potential jurors was error, but harmless error. The state court noted that there was no evidence that any of those few jurors in the first group gave untruthful answers and, at the same time, they were subjected to extensive questioning by both attorneys during voir dire. Hence, the state court's conclusion that the error was harmless was not objectively unreasonable.

## VI. Petitioner's Right To A Fair Trial Was Impinged By The Failure To Poll Jurors.

### A. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> P. Lopez, joined by his codefendants, contends that the trial court did not properly poll the jurors in violation of sections 1149 and 1163.7. The Attorney General counters that the issue has been forfeited because there was no objection when the verdicts were taken.
>
> We agree that the issue has been forfeited. The trial court asked the foreperson if a verdict had been reached and, when given an affirmative answer, had the court clerk read the verdicts of all three defendants. At the end, the clerk asked the jury as to each of the defendants, "is this your verdict, so say you one, so say you all?" The jury responded with a unanimous affirmation of the verdicts for each individual defendant. The defendants then requested that the jury be polled. The clerk asked each individual juror, as to each defendant, whether this was or is "your verdict." As to all three defendants, all 12 jurors answered, "yes." No counsel made any objection to the manner in which the verdicts were taken. "Where a jury is incompletely polled and no request is made for correcting the error, such further polling may be deemed waived by defendant, who cannot sit idly by and then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto." (People v. Lessard (1962) 58 Cal.2d 447, 452; accord, People v. Wright (1990) 52 Cal.3d 367, 415; People v. Flynn (1963) 217 Cal.App.2d 289, 295 [right to assert defects in manner of polling is forfeited by failure to object to method employed by trial court].)
>
> Even if the issue has not been forfeited, we conclude there was no error in the taking of the verdicts. Each juror was asked individually if the verdicts read by the court clerk were their individual verdicts and each answered in the affirmative. This is sufficient. (People v. Mestas (1967) 253 Cal.App.2d 780, 786.) The different verb tense used by the court clerk in taking the verdicts is of no significance. Further, even if there was error, there is no prejudice. "[T]he trial court's failure to ask each juror if the verdict was his or her [own] requires reversal only if appellant were prejudiced by that error." (People v. Masajo (1996) 41 Cal.App.4th 1335, 1340.) There is nothing in this record to suggest that the verdict was not unanimous or that any juror was coerced into voting for conviction.

(Lopez, supra, slip op. at p. 14).

### B. Analysis.

Respondent once again argues that Petitioner's claim is unexhausted, thereby precluding review. Again, the Court agrees. However, notwithstanding the lack of exhaustion, the claim fails to state a federal habeas claim because no federal constitutional right is involved. The right to poll the jury, though one of long-standing in federal and most state courts, see Virgin Islands v. Hercules, 875

F.2d 414, 417 (3d Cir.1989), is not, however, a binding constitutional right.  Id.; see United States v.

Sturman, 49 F.3d 1275, 1282 (7th Cir. 1995) (right to poll jury is not of constitutional dimension);

United States v. Carter, 772 F.2d 66, 67 (4th Cir. 1985) (same); United States v. Beldin, 737 F.2d 450,

455 (5th Cir.) (same); Jaca Hernandez v. Delgado, 375 F.2d 584, 585-86 (1ˢᵗ Cir. 1967)(same). In

federal court, the right to poll the jury instead derives from Federal Rule of Criminal Procedure 31(d),

which allows a poll of the jury at the request of any party or upon the court's own motion. Hercules,

875 F.2d at 418; Beldin, 737 F.2d at 455.  But federal criminal procedural rules, such as Rule 31(d),

"do not apply to state court proceedings."  Boardman v. Estelle, 957 F.2d 1523, 1525 (9th Cir. 1992).

Thus, Petitioner's state trial court was only bound by, and therefore could have violated only, state

law, i.e., California Penal Code § 1163, which requires the court to poll the jurors individually at the

request of either party.  The denial of a state-created procedural right such as this may present a

cognizable due process claim on federal habeas corpus review only if it resulted in a "deprivation of a

substantive right protected by the Constitution."  Bonin v. Calderon, 59 F.3d 815, 842 (9th Cir.1995).

Petitioner does not present such a claim here because, as discussed above, the right to poll the jury is

not one protected by the Constitution.  Violations of state law are not a basis for federal habeas corpus

relief.  Estelle v. McGuire, 502 U.S. at 67-68.  Accordingly, Petitioner's claim, even if exhausted,

would fail to state a cognizable federal habeas claim for which this Court could grant relief.

Because Petitioner has not established any grounds for habeas relief, the Court will,

accordingly, deny the petition for writ of habeas corpus with prejudice.

Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a

writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and

an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336

(2003).   The controlling statute in determining whether to issue a certificate of appealability is 28

U.S.C. § 2253, which provides as follows:

>   (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge,
>       the final order shall be subject to review, on appeal, by the court of appeals for the circuit
>       in which the proceeding is held.
>
>   (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a
>       warrant to remove to another district or place for commitment or trial a person charged

with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## **ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1.  The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;

2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

///

///

///

28

1      3.  The Court DECLINES to issue a certificate of appealability.

2

3    IT IS SO ORDERED.

4      Dated:   **September 19, 2013**            **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28